[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
In this case, plaintiff Maria Maderos, administratrix of the estate of her late mother, Filomena Leandres, has brought suit against several defendants, including American Medical Response of Connecticut, Inc. ("ANR"), to recover money damages in connection with her mother's death. In her 38-count Amended Complaint ("Complaint") dated November 23, 1998,[1] the plaintiff has pleaded seven separate claims against AMR: two sounding in negligence (Counts V and XXII); two sounding in gross negligence (Counts XI and XXIX);[2] two sounding in wilful, wanton and reckless misconduct (Counts XVII and XXXV); and one stating an alleged violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42a-110g.[3]
The case is now before the Court on AMR's motion to strike the plaintiff's CUTPA claim on the ground that it is deficient as a matter of law under the doctrine of Haynes v. Yale-New HavenHospital, 243 Conn. 17, 699 A.2d 964 (1997). The defendant CT Page 3013 contends that in this case, as in Haynes, the allegations of the plaintiff's CUTPA claim are based on medical malpractice, and thus fall outside the lawful scope of CUTPA.
In Haynes, the Supreme Court held that:
 professional negligence — that is, malpractice — does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered[.]
Haynes v. Yale-New Haven Hospital, supra, 243 Conn. at 34. Relying on the logic of several out-of-state decisions which limited the reach of similar consumer protection statutes to "actions . . . chiefly concerned with `entrepreneurial' aspects of [medical] practice, such as the solicitation of business and billing practices, as opposed to claims directed at the `competence of and strategy' employed by . . . the defendant;" id. at 35-36 (quoting Ikuno v. Kip, 912 F.2d 306, 312 (9th Cir. 1990) (applying Washington law)); the Haynes Court concluded:
 that the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel.
Id. at 38.
The Haynes Court recognized that since health care providers typically charge for their services, plaintiffs complaining of malpractice might attempt to recast their malpractice claims as CUTPA violations on the theory that, as consumers of medical services, they were deceived as to the quality of care for which they had paid. Rejecting such anticipated efforts to plead malpractice claims as CUTPA violations, the Court flatly declared that:
 Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice into a CUTPA claim. Accordingly, within this framework, we must review the plaintiff's allegations of CUTPA violations and look to the underlying nature of the claim to determine CT Page 3014 whether it is really a medical malpractice claim recast as a CUTPA claim.
Id. at 38.
Employing this analysis in the case before it, the Haynes Court upheld the trial court's entry of summary judgment for Yale-New Haven Hospital on a CUTPA claim based on the following allegations:
 The plaintiff alleged that Yale-New Haven was certified as a major trauma center and held itself out as such, but failed to staff the emergency department adequately, and that it failed to train and support adequately its existing staff to meet the applicable standards for a major trauma center. The plaintiff further alleged that Yale-New Haven also failed, with respect to emergency room procedures, to meet the standards for a major trauma center.
Id. at 38. Such allegations, ruled the Court, could not establish a violation of CUTPA for two reasons.
First, the defendant's only express representation to the public — that it was a certified major trauma center — was undeniably true. As such, it was obviously not a misrepresentation, and thus could not be considered either deceptive.
Second, the defendant's implied representation to the public — that, by holding itself out as a major trauma center it would meet the applicable standards of competency for such a center — was
 simply what all physicians and health center providers represent to the public — that they are licensed and impliedly that they will meet the applicable standards of care.
Id. at 39. The Court thus concluded that, "If [health care providers] fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice."Id.
 II CT Page 3015
In this case, AMR claims that the plaintiff's CUTPA claim must be stricken because it is based, in its essence, upon alleged deficiencies in AMR's rendering of professional medical services rather than alleged unfair or deceptive acts or practices in conducting the entrepreneurial or commercial aspects of its business. For the following reasons, the Court agrees with the defendant, and therefore grants its motion to strike.
The first seventeen paragraphs of the challenged count are common to each of the plaintiff's seven counts against AMR. In them, the plaintiff alleges that AMR played the following culpable role in the train of events that caused her mother's death:
On April 27, 1996, AMR was a Connecticut corporation engaged in the business of providing health care and/or professional emergency medical care and transportation to emergency medical facilities. Complaint, Count XXXVII, ¶ 1. The defendant's employees at that time were emergency medical technicians duly licensed by the State of Connecticut Id., ¶ 2.
On the evening of April 27, 1996, the plaintiff's mother, a resident of Shelton, Connecticut, suddenly became ill, requiring emergency medical services at her Shelton home. Id. ¶ 5. To request such services, the plaintiff's mother and/or a friend or family member placed a 911 call to the City of Shelton Police Department ("Shelton Police") at approximately 9:13 p. m. Id., ¶¶ 6-7.
Upon receiving the 911 call, the Shelton Police transmitted the plaintiff's mother's request for services to AMR, which was then under contract with the City of Shelton to provide such services to the public on the City's behalf. Id., ¶¶ 4, 9-10. Despite its contractual obligations, AMR failed to respond to the plaintiff's mother's request for services and/or to dispatch emergency medical personnel to her home. Id., ¶ 11.
At approximately 9:50 p. m. on April 27, 1996, when emergency medical personnel failed to arrive at the plaintiff's mother's home, her family and/or friends placed a second 911 call to the Shelton Police. Id., ¶ 12. The Shelton Police transmitted this second request for services to AMR, which finally dispatched its servants, agents or employees to the plaintiff's mother's home. Id., ¶¶ 13-14. CT Page 3016
Upon their arrival sometime after 9:53 p. m., AMR personnel attempted to render emergency medical care to the plaintiff's mother, then transported her to Griffin Hospital, where she was later pronounced dead. Id., ¶ 16-17.
The plaintiff alleges that AMR's above-described conduct violated CUTPA in the following way:
 18. At all times mentioned herein, AMR as a corporation or business entity in this State has internally evaluated the application of specific State statutes to its business practices, specifically, Connecticut General Statutes § 52-557
and C.G.S. § 7-311 and determined that as a matter of law AMR, its employees, agents and servants were immune from liability for simple negligence and gross negligence and as such AMR has made certain business decision in reference to training, staffing and other administrative issues with the knowledge that they could provide substandard care and treatment to those seeking emergency medical attention without concern for the civil liability.
 19. The decisions and actions of AMR as a business or corporate entity in the State of Connecticut violate our public policy and are offensive to standards of public expectations and violate C.G.S. § 42-110 (a) et. seq., in that AMR
 a. engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce by failing to have properly trained, equipped or competent personnel working for the company.
Complaint, Count XXXVII, ¶¶ 18-19.
The underlying claim presented by the foregoing allegations is clearly one of medical malpractice. The gravamen of the claim is that the defendant injured the plaintiff's mother by rendering "substandard" care and treatment to her on the day she died. Accordingly, the only ascertainable losses for which the plaintiff seeks to recover damages are all personal injuries, including pain, suffering and death, which her mother is claimed to have suffered as the defendant's would-be patient. Entirely missing from the complaint is any claim of economic injury
allegedly suffered by the plaintiff's mother as a consumer in the medical services marketplace. CT Page 3017
The plaintiff's claim, moreover, is not based on any misrepresentation other than that which was ruled insufficient to satisfy CUTPA by the Supreme Court in Haynes. Just as the plaintiff in Haynes admitted that defendant Yale-New Haven Hospital was, as it claimed to be, a duly certified major trauma center, the plaintiff in this action admits that the defendant AMR is, as it had claimed to be, a Connecticut corporation lawfully engaged in the business of providing health care and/or professional medical care and transportation to emergency medical facilities. Here, moreover, it is specifically alleged that the defendant's employees who rendered such services were duly licensed in the State of Connecticut. Here, then, the only claim of misrepresentation the defendant is claimed to have made is as to the adequacy, of its services to satisfy the relevant standard of care — a misrepresentation that fails to establish a CUTPA violation under Haynes.
The plaintiff's claim, it must finally be noted, is not saved from being stricken by its additional allegation that the understaffing and undertraining of its staff resulted from business decisions — impliedly cost-cutting measures — made in the belief that if it committed malpractice it would be immune from suit. Such alleged conduct, however despicable if it occurred, would not transform the plaintiff's underlying claim of malpractice into a claim of unfair or deceptive trade practices. In sum and in substance, the injuries for which damages are sought remain personal instead of economic, and the alleged cause of such injuries is the rendering of "substandard" emergency medical services.
For all of the foregoing reasons, the defendant's motion to strike is hereby GRANTED.
Michael R. Sheldon, J.